**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DANIEL BERG,

                    Plaintiff,

v.                                   CIVIL ACTION NO.  2:05-cv-00900

JONATHAN HALPERIN,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's motion for a temporary restraining order or preliminary injunction [Docket 4].  Following full briefing by the parties and a preliminary injunction hearing conducted on November 22–23, 2005, the court **FINDS** it has jurisdiction over this dispute and **DENIES** the motion for the reasons explained herein.

*I. Findings of Fact*

The plaintiff, Daniel Berg, and the defendant, Jonathan Halperin, are the only two members of Mountain America, a Maryland limited liability company (LLC) created to develop a piece of property in Monroe County, West Virginia.  This property is located within the Southern District of West Virginia.  Mr. Berg and Mr. Halperin each own fifty percent of the company.  Mr. Berg is a citizen of West Virginia and Mr. Halperin is a citizen of the District of Columbia.

The parties are engaged in a personal dispute.  They are currently governed by a Maryland TRO that gives Mr. Halperin the ability make closings and pay business expenses without Mr.

Berg's approval.  Mr. Berg is not receiving a salary.  The court is unable to make any other clear factual determinations based on the inherent lack of credibility of the testimony of Mr. Halperin, Mr. Berg, and Ms. Shoupe.

On November 10, 2005, Mr. Berg filed a fourteen-count Complaint in this court.  The Complaint, which contains considerably more than a short and plain statement of the facts as required by Federal Rule of Civil Procedure 8(a), alleges that Mr. Halperin breached the company's operating agreement and defamed Mr. Berg.  The 283-paragraph Complaint seeks a variety of relief, including a declaratory judgment of the parties' rights and obligations and damages stemming from Mr. Halperin's  management of the company and his publication of defamatory statements.  Mr. Berg also asks for damages to compensate him for Mr. Halperin's intentional and negligent infliction of emotional distress, Mr. Halperin's abuse of process, and for injuries he sustained from Mr. Halperin's civil conspiracy.  In addition to these claims, Mr. Berg pleads that Mr. Halperin violated the civil provisions of the Racketeer Influenced & Corrupt Organizations Act (RICO) and committed multiple counts of mail fraud.

Five days after filing the Complaint, Mr. Berg filed the pending motion for a temporary restraining order or preliminary injunction either to declare his rights under the operating agreement or to appoint an independent receiver to control the company temporarily.  The court conducted a hearing on the motion on November 22–23, 2005.  After listening to the arguments and examining the evidence, the court took the motion under advisement and asked the parties to brief several jurisdictional questions the court raised, including the court's diversity jurisdiction, the applicability of the *Rooker-Feldman* doctrine, and the appropriateness of abstaining pursuant to *Colorado River*

*Conservation District v. United States*, 424 U.S. 800 (1976).  This opinion addresses each jurisdictional issue and then proceeds to the merits of the pending motion.

## II. Subject Matter Jurisdiction

Mr. Halperin and Mountain America are named defendants in the Complaint.  According to the Complaint, this court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332. (Compl. ¶ 21.)  Mr. Berg claims he is a citizen of California and asserts that Mr. Halperin is a citizen of the District of Columbia.  (*Id.*)  Mr. Halperin, however, contends that Mr. Berg is a citizen of West Virginia.

To be a citizen of a state for diversity purposes, an individual must be a United States citizen and be domiciled within that state.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  Although an individual can maintain multiple residences, an individual has only one domicile at any given time.  *Martinez v. Bynum*, 461 U.S. 321, 340 (1983); *Comm'r v. Nubar*, 185 F.2d 584, 586 (4th Cir. 1950).  An individual is domiciled in a state if the individual is physically present in the state *and* the individual has an intent to remain there indefinitely.  *Sun Printing and Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904).  No particular factors are dispositive of this issue, which requires the court to evaluate all of the relevant circumstances to determine Mr. Berg's domicile.  13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3612 (2d ed. 1984).

Based upon Mr. Berg's physical presence in West Virginia, his voter registration (Def.'s Ex. 9), handgun permit application (Def.'s Ex. 10), automobile liability insurance identification (Def.'s Ex. 11), and his most recently filed federal income tax return, the court **FINDS** that Mr. Berg is a

citizen of West Virginia for diversity purposes.  The plaintiff's attempts to prove he is actually a citizen of California by pointing to a driver's license, a bank statement with a California address, and other documents are unavailing as the date of the driver's license is November 9, 2005, one day prior to the filing of this action, and the other documents relate to transactions that occurred dating back to 2001.  None of these documents prove that Mr. Berg was physically present in California *and* had an intent to remain there indefinitely.  Mr. Berg is a citizen of West Virginia for diversity purposes.  Though his citizenship is not as he claims, however, he is diverse from Mr. Halperin.

For this court to entertain a case based on its diversity jurisdiction, however, all of the plaintiffs must be diverse from all of the defendants.  Mountain America is listed in the Complaint as a defendant.  For diversity purposes, it is well settled that an LLC takes on the citizenship of its individual members.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (explaining the "oft-repeated rule" that for an artificial entity other than corporations, the entity takes on the citizenship of its individual members).  Accordingly, Mountain America is a citizen of the District of Columbia and West Virginia for diversity purposes.  Therefore, if Mountain America remains in the case, the court lacks subject matter jurisdiction because complete diversity among the parties would be lacking.

It is, however, well settled that the court may drop a nondiverse party from a case to achieve complete diversity if the party's presence is not necessary under Federal Rule of Civil Procedure 19.  *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978).  Although Rule 19 does not provide the authority for a court to dismiss a party whose presence is not essential, Rule 21 allows for this procedure.  *Id.* at 692 n.23.  Specifically, Rule 21 states that "[p]arties may be

dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

To determine whether a partnership or LLC is a necessary party, the court must first ascertain whether the plaintiff's claims are direct or derivative.  James R. Burkhard, *May a Member of an LLC or a Limited Partner Bring a Breach of Fiduciary Duty Claim Against Those Controlling the LLC or Partnership as a Diversity Action?*, 23 REV. LITIG. 239, 245–46 (2004).  If the claims are completely derivative on behalf of the company, then the company is at least a necessary party under Rule 19(a) and likely is indispensable under Rule 19(b).  *Buckley v. Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991); *Moore v. Simon Enters.*, 919 F. Supp. 1007, 1009 (N.D. Tex. 1995); *see also* Burkhard, *supra*, at 246 (explaining that if an action is purely derivative, it is "brought in the name of and for the benefit of the LLC or partnership," and thus the LLC or partnership is necessary). Applicable state law guides the analysis of determining whether a plaintiff's claims are direct or derivative.  *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990); *N.Y. Life Ins. Co. v. Ramco Holding Corp.*, 938 F. Supp. 754, 756 (N.D. Okla. 1996).  In diversity cases, "[o]nce state law characterizes the action as either derivative or direct, the applicable procedural rules are determined by federal law."  *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987).

Mountain America's provisional operating agreement contains an express choice of law provision explaining that all disputes under the agreement are to be resolved pursuant to Maryland law.  (Pl.'s Ex. 1 at ¶ 35.)  As is true with many corporate governance matters, however, Maryland courts are guided by Delaware case law on this issue.  *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, 2005 U.S. Dist. LEXIS 26837, at *11 (D. Md. 2005).

Derivative actions are brought for the benefit of a business entity instead of for the benefit of the plaintiff individually. *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988). As a result, damages in a derivative suit are paid directly to the business entity, not to the individual plaintiff. *Id*. Alternatively, a direct action is brought by an individual shareholder, member, or partner to redress a personal injury. *Id*.; *Paskowitz v. Wohlstadter*, 822 A.2d 1272, 1276 (Md. Ct. Spec. App. 2003). To bring a direct action, the individual must be injured "directly or independently" of the business entity. *Kramer*, 546 A.2d at 352. The key to this analysis is to determine whether the plaintiff suffered a "special injury." *Lipton v. News Int'l Plc.*, 514 A.2d 1075, 1078 (Del. 1986).

It is important to note that a plaintiff's characterization of his claims as being either direct or derivative has no bearing on the analysis.[1] *See Paskowitz*, 822 A.2d at 1277 ("Whether a claim is derivative or direct is not a function of the label the plaintiff gives it."). The court must review the body of the complaint to make the determination. *Moran*, 490 A.2d at 1070. It is possible that the facts of a complaint could support both a derivative and a direct action. *Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996). In this event, the individual may proceed with the direct action. *Elster v. Am. Airlines, Inc.*, 100 A.2d 219, 222 (Del. Ch. 1953). The two major points of inquiry when reviewing the complaint are to ask who suffered the alleged harm and who will receive the benefit of any recovery. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004).

---

[1]    This point of law is important here as the plaintiff inexplicably states that he has brought a derivative claim on behalf of Mountain America in footnote one of his motion for a temporary restraining order or preliminary injunction [Docket 4]. (*See also* Nov. 22 Hr'g Tr. 26:15–17 (referencing a rule of civil procedure for derivative actions).)

Although Mr. Berg makes a plethora of claims, they all arise from of his personal dispute with Mr. Halperin.  Mr. Berg's Complaint describes harm to himself based on Mr. Halperin's recent conduct.  In many of the counts, such as the claims for defamation, invasion of privacy, infliction of emotional distress, and mail fraud, any alleged harm is exclusively to Mr. Berg as an individual.  Likewise, Mr. Berg will receive the benefit of any recovery.[2]  Mr. Berg asks for personal damages multiple times throughout the Complaint.  Because the alleged harm in the Complaint has occurred to Mr. Berg and because Mr. Berg primarily would receive the benefit of any recovery, the court **FINDS** that Mr. Berg's action should be classified as a direct action under Maryland law.

Once the court determines that a plaintiff's claim is direct and not derivative, it is "highly unlikely that any further analysis [is] necessary" to determine whether an LLC is a necessary party.  Burkhard, *supra*, at 247.  Despite this strong presumption, the court will proceed with a Rule 19 analysis to ensure that Mountain America is not a necessary and indispensable party.  In reviewing the substance of Rule 19, the court must ask whether Mountain America's presence in the suit is required to protect some interest of the business that Mr. Berg and Mr. Halperin's presence would not protect otherwise.

If the court answers each of the following three questions affirmatively, then Mountain America is not a necessary party as defined by Rule 19(a): (1) Can complete relief be accorded to Mr. Berg and Mr. Halperin if Mountain America is not a party?; (2) Would Mountain America's absence avoid impairing Mountain America's interest?; and (3) Can Mountain America's absence avoid subjecting Mr. Berg or Mr. Halperin to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations?

---

[2]     Although Mr. Berg alleges that Mountain America will benefit from Mr. Berg's regaining control of the company, the requested relief primarily benefits Mr. Berg himself.

First, can complete relief be accorded to Mr. Berg and Mr. Halperin if Mountain America is not a party? Because Mr. Berg's claims essentially outline a personal dispute with Mr. Halperin, the court **FINDS** that it can accord complete relief without Mountain America's presence. Therefore, the first question is answered affirmatively.

Second, would Mountain America's absence avoid impairing Mountain America's interest? The fact that Mountain America is made up of only two members who are both parties to this lawsuit is extremely dispositive of this question. For this reason, Mr. Berg and Mr. Halperin will represent any interest of Mountain America. *See HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996) (finding that because a partnership was represented by only three members, and all members were parties to the suit, that the partnership's interest was represented adequately); *VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*, 727 F. Supp. 1167, 1169 (N.D. Ill. 1989) (explaining that a partnership's interest was adequately represented by the two joint venturers that were already parties). As an LLC, Mountain America is an artificial entity that represents the aggregate interests of its individual members. Accordingly, the court should not require an LLC's presence in a personal dispute among all of the LLC's members. Burkhard, *supra*, at 257. The Fourth Circuit has explained that in a strictly internal dispute between partners, the presence of the partnership itself is not required as long as all of the partners are parties. *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 303–04 (4th Cir. 1992). If Mountain America had additional members other than Mr. Berg or Mr. Halperin, then the argument in favor of its presence would be much stronger; that, however, is not the case. The court **FINDS** that Mountain America's absence from this case would not impair any interest the company has that is independent from the

personal dispute between its two members.[3]   Therefore, the second question is answered affirmatively.

Third, would Mountain America's absence avoid subjecting Mr. Berg or Mr. Halperin to a substantial risk of incurring multiple or inconsistent obligations?  Because the LLC operates through its individual members, and because all of Mountain America's members are parties to this action, the possibility of the LLC bringing a suit by itself is nearly inconceivable.  *See* Burkhard, *supra*, at 266 ("[I]f all the partners or members are joined, there seems little risk that the defendant general partner or manager will be subject to inconsistent obligations within the meaning of Rule 19(a)."); *see also Delta Fin. Corp.*, 973 F.2d at 304 (finding the absence of the partnership would not leave the parties in the case open to incur inconsistent obligations).  The court **FINDS** that Mountain America's absence would not subject Mr. Berg or Mr. Halperin to multiple, double, or inconsistent obligations as a result of Mountain America's absence.  Therefore, the third question is answered affirmatively.

Because the court answered the three above questions in the affirmative, Mountain America is not a necessary party to this action as defined by Rule 19(a).  Accordingly, the court does not need to analyze whether Mountain America is indispensable under Rule 19(b).  By finding that Mountain America's presence is not essential, the court can dismiss the LLC pursuant to Rule 21.  Accordingly, the court **DISMISSES** Mountain America from this action pursuant to Rule 21 as the company is not a necessary and indispensable party as defined by Rule 19.  Following the dismissal

---

[3]     The court notes also that no evidence exists suggesting that creditors of Mountain America would be prejudiced by a judgment of this court in a way that would require Mountain America's presence in the suit.

-9-

of Mountain America from the suit, the court **FINDS** that the remaining parties are completely diverse and the court has subject matter jurisdiction over their dispute.

### III. The Rooker-Feldman Doctrine

Mr. Halperin argues that the court should dismiss Mr. Berg's claims pursuant to the *Rooker-Feldman* doctrine, which prevents a federal district court from hearing appeals directly from state-court judgments. (Defs.' Resp. to Pl.'s Mot. for TRO 14–16.) The United States Supreme Court recently reigned in lower courts' usage of the antiquated doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 125 S. Ct. 1517 (2005). Justice Ginsburg explained in the unanimous opinion that the doctrine should be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1521–22. Prior to this decision, lower courts were construing the doctrine far beyond its intended applicability. *Id*. at 1521 (explaining that the doctrine should not to be confused with ordinary preclusion or abstention doctrines). To analyze whether the *Rooker-Feldman* doctrine applies to this case, it is first necessary to review the state-court litigation.

The defendant in this case, Mr. Halperin, filed a state-court action against Mr. Berg in the Circuit Court of Montgomery County, Maryland, on October 4, 2005. On October 6, the day that Mr. Berg was to be served with notice of the Maryland case, Mr. Halperin went to the Honorable Robert A. Irons, a judge in the Circuit Court of Monroe County, West Virginia, and asked him to protectively restrain Mr. Berg from taking any "destructive or even violent" action upon learning

-10-

of the Maryland case.[4]  Later that day, Judge Irons issued a TRO that clarified how Mr. Berg and

Mr. Halperin were to behave for a ten-day period and set a hearing for October 14.  On October 14,

Judge Irons modified the TRO to relax some of the restraints on Mr. Berg and directed both parties

"to treat each other with civility and respect and to take no action that would be construed . . . as

being directed towards intimidating or harassing the other persons to this litigation in the hopes of

gaining some advantage."  The West Virginia state court set another hearing for November 7.  At

that hearing, Judge Irons explained that the TRO was still in existence and further instructed the

parties on how to behave.  He also commented that he believed another court could better decide

most of Mr. Halperin's requested relief and stated that the case should be taken up by Maryland "or,

better still, in federal court in Charleston."  Two days later, Mr. Halperin filed a motion for a TRO

in the Maryland case.  In that motion, Mr. Halperin specifically asked for an order allowing him to

conduct closings and to use the company bank accounts to pay Mountain America's expenses

without the consent of Mr. Berg.  (Mem. Supp. Mot. for TRO and Prelim. Inj. 9–10.)  The Honorable

Delawrence Beard conducted a hearing that same day in which he not only granted Mr. Halperin's

requested relief but placed Mr. Halperin in complete control of the company until further

proceedings. Explaining his decision, Judge Beard stated:

> When it comes to the management of corporate assets when there is an assertion that
> there's been serious impropriety and a counter-assertion on the other part, it's the
> court's general inclination [] to vest one party with the almost exclusive financial
> authority so if there is any impropriety, it can be detected and laid at the hands of
> only one individual.  To have them share that responsibility with respect to the

---

[4]      It remains unclear why Mr. Halperin did not seek this order from the Maryland court
if Maryland actually had personal jurisdiction over Mr. Berg, which Mr. Berg continues to dispute.

finances when they're obviously at loggerheads doesn't resolve anything and it exposes the corporation to damage.[5]

(Maryland TRO Hr'g Tr. 17:14–23.) Judge Beard then scheduled a preliminary injunction hearing, which was continued indefinitely earlier this week.

Because Mr. Berg filed his Complaint in this court one day following the entry of the Maryland TRO, Mr. Halperin claims that the *Rooker-Feldman* doctrine should apply to prevent this court from assuming jurisdiction. Mr. Halperin is correct that the *Rooker-Feldman* doctrine is as applicable to a state court's interlocutory orders as it is to final judgments. *See Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir. 1996) ("It cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders."); *see also Dunbar v. Lavery*, 2005 U.S. Dist. LEXIS 22084, at *8 (D. Conn. Sept. 21, 2005) (finding that *Rooker-Feldman* still applies to interlocutory orders after the Supreme Court's *Exxon Mobil* decision). Therefore, if Mr. Berg's Complaint essentially asks this court to overturn the state court's TRO, then the *Rooker-Feldman* doctrine prevents this court from assuming jurisdiction.

The heart of Mr. Berg's Complaint, however, asks this court for long-term relief in declaring the ultimate rights and responsibilities of himself and Mr. Halperin under Mountain America's provisional operating agreement. In addition, the bulk of Mr. Berg's claims raise issues not even mentioned in the state court proceeding, including his claims for defamation, invasion of privacy, infliction of emotional distress, mail fraud, civil conspiracy, and violations of RICO's civil

---

[5]    Recognizing the constitutional limitations of this court's jurisdiction, the court will not analyze or comment upon the Maryland state court's decision to enter the TRO or on the procedural decision to proceed in wake of the pending West Virginia TRO.

provisions.[6]  Mr. Berg does ask for some short-term relief as is evident by the pending motion for

a TRO or preliminary injunction, but the requested relief is much broader than the specific relief Mr.

Halperin asked the Maryland state court to grant.  As stated above, Mr. Halperin asked for only two

things in his motion for a TRO in Maryland: 1) the ability to make closings without Mr. Berg's

approval and 2) the ability to pay Mountain America's bills without Mr. Berg's approval.  Mr.

Berg's request for temporary relief in this court goes well beyond the ability to close or the ability

to pay bills, and even asks that the court appoint a receiver to manage the company if necessary.

Although some of Mr. Berg's claims in the Complaint relate to some of the issues currently

before the Maryland court, the *Rooker-Feldman* doctrine presents no bar to this court's assumption

of jurisdiction over those issues.  *See Exxon Mobil*, 125 S. Ct. at 1527–28 ("When there is parallel

state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of a judgment in

state court.").  Also, following *Exxon Mobil*, the Fourth Circuit has explained that "the Supreme

Court held that the *Rooker-Feldman* doctrine does not deprive a federal district court of subject

matter jurisdiction over a suit involving issues similar to those raised in pending state court

litigation." *Kimble v. Greenpoint Mortgage*, 2005 U.S. App. LEXIS 7143, at *2 (4th Cir. Apr. 26,

2005) (unpublished).  Accordingly, the court **FINDS** that the *Rooker-Feldman* doctrine is

inapplicable to this case because the plaintiff's Complaint is not a disguised attempt to appeal a

state-court judgment in this court.

---

[6]  Mr. Halperin's own description of the Maryland case is helpful as he describes it as
a case "for an accounting and [] for fraud for Mr. Berg's conduct to recover sums that he had taken
from the company improperly and for the theft of corporate opportunity in the Blue Mountain deal
which has cost Mountain America, according to Mr. Berg's projections, $27 million."  (Nov. 23
Hr'g Tr. 33:1–6.)

*IV. Abstention*

The defendant also argues that the court should dismiss Mr. Berg's Complaint on abstention grounds. Although the defendant claims that the court could abstain based on *Colorado River*-type, *Burford*-type, or *Younger*-type abstention, the only doctrine potentially applicable to this case is *Colorado River*-type abstention, which was explained in *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* explained that "where a federal case duplicates contemporaneous state proceedings" and "exceptional circumstances" related to the conservation of judicial resources and wise judicial administration "clearly favor[] abstention," then a federal court may abstain. *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340–41 (4th Cir. 2002). The key to *Colorado River*-type abstention is a finding by the court of exceptional circumstances that make abstention proper; normally, parallel actions in federal and state courts are allowed until one becomes preclusive of another "despite the duplication of judicial resources that this may entail." *Id*. at 340. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

Before *Colorado River*-type abstention can be considered, the must determine whether parallel proceedings in state and federal court actually exist. *Gannett Co. v. Clark Constr. Group*, 286 F.3d 737, 741 (4th Cir. 2002). Although the federal action filed by Mr. Berg presents numerous issues not involved in the pending state court litigation in Maryland or West Virginia,[7] the court

---

[7]     Even though the West Virginia state case was removed to federal court by Mr. Berg, Mr. Berg's West Virginia citizenship will cause that case to be remanded to the Circuit Court of Monroe County based on the forum defendant rule. Because any arguments the defendant has made suggesting that this court should abstain in favor of the West Virginia state case are unavailing, the court's abstention analysis will consider whether abstention is proper in favor of the Maryland proceedings. Based upon Judge Irons' previous statements that federal court would be a more appropriate forum to consider this case, it is unlikely that the West Virginia state case will proceed.

-14-

assumes that the threshold requirement of parallel proceedings is met and undergoes an analysis of whether *Colorado River*-type abstention is appropriate.

Six factors are pertinent to this analysis:  (1) whether the litigation's subject matter involves property where the first court involved could assume jurisdiction to the exclusion of other courts; (2) the convenience of the federal forum; (3) the desirability of piecemeal litigation; (4) the relevant order that courts have obtained jurisdiction and the progress of each action; (5) whether state or federal law will govern the merits; and (6) the adequacy of the state proceedings to protect the parties' rights.  *Vulcan*, 297 F.3d at 341 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 19–27 (1983)).

With regard to the first factor, although the litigation involves the property owned by Mountain America, there is no indication that any court will assume jurisdiction of this property to the exclusion of others.  It should be noted that all of the property in dispute is within the Southern District of West Virginia and that the Maryland state court likely would have difficulties assuming jurisdiction over some of it.  Because this dispute is primarily a personal dispute between Mr. Berg and Mr. Halperin and not a dispute over property, this factor is not extremely helpful to the analysis.

The second factor, however, is more helpful.  Not only does this judicial district contain all of the property, but it also contains most of the prospective witnesses.  Likewise, most of the events in dispute transpired within this district.  The second factor weighs against abstention because the federal forum in West Virginia appears more convenient than the Maryland state court.

The third factor concerns the desirability of piecemeal litigation.  The relevant question under this factor "is not simply whether granting the plaintiff's relief will result in piecemeal litigation, but whether it is the *federal court's* involvement in the case that will lead to piecemeal

litigation." *United Serv. Prot. Corp. v. Lowe*, 354 F. Supp. 2d 651, 656 (S.D. W. Va. 2005).  The threat of piecemeal litigation in this case is that two cases, one in federal court and one in state court, will proceed simultaneously.  The Fourth Circuit, however, has explained that this type of piecemeal litigation is not the threat of piecemeal litigation with which *Colorado River* was concerned.  *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 465 (4th Cir. 2005).  "The threat of piecemeal litigation in the sense that two cases proceed simultaneously thus is not sufficient to support a decision to abstain under *Colorado River*."  *Id.* at 465–66.  The federal case also contains numerous claims not raised in the Maryland case.[8]  Accordingly, the third factor weighs against abstention.

The fourth factor concerns the relative progress of the state and federal cases.  The Supreme Court has explained that in analyzing this factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  This court has found that there are at least two policy considerations underlying this factor.  *E. Associated Coal Corp. v. Skaggs*, 272 F. Supp. 2d 595, 601 (S.D. W. Va. 2003).  First, the more a state case has progressed, the greater the state's investment in the proceeding.  *Id.*  Thus, as a matter of comity, abstention is more appropriate if a state has made a significant investment of time and resources.  *Id.*; *see Gannett*, 286 F.3d at 748 (explaining abstention is based in part on principles of comity).  Second, the reasons for abstaining are greater if the plaintiff in the federal case has participated actively in the state proceedings for a lengthy time.  *Id.*; *see Vulcan*, 297 F.3d at 343 (finding abstention appropriate where the case had been "gladly

---

[8]        Most of the issues that do overlap were introduced into the Maryland action by Mr. Halperin via a Second Amended Complaint after Mr. Berg filed his action in this court.

-16-

litigated by both parties in California" and had come to federal court following a negative outcome in state court).

In this case, the only proceeding that has occurred in Maryland state court was the November 9 TRO hearing. Mr. Berg did not engage in any undue delay in filing his federal court action, as he filed his Complaint the day after the Maryland hearing. The federal case has been prosecuted promptly following Mr. Berg's Complaint. Specifically, this court already has held a two-day preliminary injunction hearing in which both parties were accorded the opportunity to make arguments, call witnesses, and introduce evidence. Unlike the Maryland TRO hearing, both parties were given notice of the hearing to allow the necessary preparation of evidence and witnesses. The preliminary injunction hearing that was scheduled in Maryland now has been continued indefinitely pending the court's determination of whether it has personal jurisdiction over Mr. Berg. Accordingly, the fourth factor does not weigh in favor of abstention.

The fifth factor concerns whether state or federal law controls the merits. State law will decide most of the issues in this case. Although some of Mr. Berg's claims will federal issues, the bulk of his claims will be decided according to state law. Most of the corporate governance issues will be decided under Maryland law,[9] but Mr. Berg's defamation claims presumably are based on West Virginia law as the alleged defamatory conduct occurred in West Virginia. Because state law substantially control the merits, the fifth factor weighs in favor of abstention.

The sixth factor concerns the state court's capability to protect the rights of the parties adequately. Apart from Mr. Berg's contention that the Maryland state court lacks personal

---

[9]     Mr. Berg disputes the effectiveness of the operating agreement's choice of law provision and contends that many of the corporate governance issues should be decided according to West Virginia law instead. For the purposes of this opinion, the court will assume that the choice of law provision is enforceable.

-17-

jurisdiction over him, no reason exists to doubt the adequacy of the state forum.  To the extent that the claims before the Maryland court are the same as the claims before this court, the sixth factor weighs in favor of abstention.

Although the court has carefully reviewed each of the six factors, it must be mindful that "the decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.  In tallying the six factors[10] and considering them against the policies of *Colorado River*-type abstention, the court **FINDS** that this case does not present the "exceptional circumstances" necessary for the court to surrender its jurisdiction.  Accordingly, abstention is unwarranted.

### *V. The Merits of the Preliminary Injunction*

Mr. Berg asks this court to grant a preliminary injunction either to restore the parties to their respective positions prior to Mr. Halperin's commencement of legal proceedings or to appoint a receiver to manage the company until the court can fully decide the merits of the case.  Before proceeding, the court notes that preliminary injunctions represent an extraordinary remedy and should "be granted only sparingly and in limited circumstances." *Microstrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).  Because the court must decide whether to issue a preliminary injunction on an incomplete record, the risk of mistake is greater, which requires the

---

[10]     Although the fifth and sixth factors weigh in favor of abstention, the second, third, and fourth have proven more relevant in this case.

party seeking this remedy to clearly establish an entitlement to relief.  *Hughes Network Sys. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

The Fourth Circuit explained the analysis a district court must employ for determining whether to issue a preliminary injunction in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 196 (4th Cir. 1977).  First, the district court must compare the likelihood of irreparable harm to the plaintiff should the court not issue an injunction with the potential harm to the defendant should the court issue an injunction.  If this balancing of hardships tips decidedly in favor of the plaintiff, the district court can grant a preliminary injunction as long as the dispute presents a serious issue for litigation and the injunction would not undermine the public interest. *Merrill, Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1054–55 (4th Cir. 1985).  The plaintiff does not have to make a strong showing of the likelihood of succeeding on the merits if the balancing of hardships weighs strongly in the plaintiff's favor.  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1992).  "This is because the hardship balancing test is a 'sliding scale' approach and 'the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction.'" *Id.*  Alternatively, however, "[t]he importance of probability of success increases as the probability of irreparable injury diminishes, and where the latter may be characterized as simply 'possible,' the former can be decisive." *Blackwelder*, 550 F.2d at 195.

Mr. Berg claims he will suffer irreparable harm if this court denies his motion for a preliminary injunction because Mr. Halperin will continue to deprive him of his livelihood. (Nov. 22 Hr'g Tr. 51:12–13.)  Mr. Berg also claims Mr. Halperin's dissemination of defamatory information to the public will irreparably harm his reputation. (*Id.* 51:19–23.)  Mr. Berg currently

-19-

is not receiving his salary and is not allowed on Mountain America's property, which allegedly prevents him from carrying out his responsibilities as a fifty-percent owner of the company.  (*Id.* 63:1–25.)  Mr. Berg's attorney argues that Mr. Berg's "[a]uthority is being challenged to the point where . . . they're going to starve him or try to freeze him out so much that he won't be able to afford litigation, for example, or to be able to represent himself, things of that nature."  (*Id.* 67:8–12.)  No evidence, however, was introduced at the hearing to prove Mr. Berg would be irreparably harmed because his financial situation would prevent him from being able to afford litigation through this court's decision on the merits.

Most of the alleged irreparable harm that Mr. Berg claimed would result from this court's failure to grant an injunction actually would not occur to himself, but instead to others.  For example, Mr. Berg explained that when people fail to follow his orders, health safety standards could be violated and that because of the presence of large equipment, "people could get hurt." (Nov. 23 Hr'g Tr. 92:22–24.)  Mr. Berg stated the project's "success is based on [him] being able to direct this ship that's in the middle of an ocean that somebody has to direct that has the experience to do so." (*Id.* 93:2–5.)  Throughout the hearing, Mr. Berg questioned Mr. Halperin's competence to manage the project due to lack of experience in the real estate field; likewise, however, Mr. Halperin constantly questioned Mr. Berg's competence to manage the project due to the plundering of company assets and past misrepresentations that caused his Nevada contractor's license to be revoked.

Considering all of the evidence, Mr. Berg has not established that the failure to issue an injunction likely will cause him irreparable harm; at most, he has established that irreparable harm is possible.  The likelihood of harm he has shown, however, must be balanced with the harm that

will result to Mr. Halperin if the court issues an injunction.  Mr. Halperin claims that if the court issues a preliminary injunction giving Mr. Berg substantial managerial rights, that Mr. Halperin will lose money.  Mr. Halperin claims Mr. Berg would continue his past conduct of looting corporate assets for personal gain.  (*Id*. 37:16–19.)  Specifically, Mr. Halperin asserts that Mr. Berg's past conduct caused the loss of the Blue Mountain deal, which caused Mr. Halperin to lose thirteen and a half million dollars.  (*Id*. 37:9–11.)

Most of the managerial powers that Mr. Halperin is currently exercising result from the Maryland TRO issued on November 9.  If this court granted a preliminary injunction that placed the company into a receivership or gave Mr. Berg more managerial authority, it would harm Mr. Halperin by removing some of his present managerial authority.  A preliminary injunction also would undermine Judge Beard's reasoning as set forth above that one individual should be given control of the company pending a full resolution on the merits to alleviate concerns about apportioning responsibility for any improprieties that may occur.  Undermining the reasoning behind the Maryland TRO would violate principles of comity, which naturally would weigh against the public interest.

Judge Beard's short-term solution for the parties appears to give the company the necessary tools to function.  For example, testimony reflects that Mr. Halperin can pay necessary business expenses to vendors and contractors (*Id*. 33:22–25), execute contracts necessary for the continuation of development activities (*Id*. 34:2–4), conduct closings (*Id*. 34:5–6), and direct the closing attorney to expend funds received from the closings (*Id*. 34:7–10).  Mr. Halperin contends that Judge Beard's short-term solution allows him to "conduct the normal operating and managerial process of the company." (*Id*. 34:11–15.)  He claims that the only problem encountered with the running of the

-21-

company under Judge Beard's solution has been Mr. Berg's interference. (*Id.* 35:8–10.) According to his attorney, Mr. Halperin believes the company is not deadlocked and "business is moving along fine" under the state TROs.[11]  (*Id.* 129:3–7.)

The harm that Mr. Halperin will incur if this court grants Mr. Berg's motion for a preliminary injunction is not overwhelming.  In fact, the court **FINDS** that if an injunction is granted, the harm to Mr. Halperin would be about the same as the irreparable harm Mr. Berg will incur if an injunction is not issued.  Considering the fact that Mr. Berg and Mr. Halperin are each fifty percent owners of the company, this finding is not surprising.  In applying the balancing of hardships analysis to this case,[12] the balancing of hardships does not weigh in favor of either party. The balance of hardship stands in equipoise as the plight of Mr. Berg is not substantially different from that of Mr. Halperin.  *See Davis v. Crown Cent. Petroleum Corp.*, 483 F.2d 1014, 1016 (4th Cir. 1973) (explaining the harm to the defendant and the plaintiff would be substantially similar). "It is in just such a case that the probability of success begins to assume real significance, for if the factors of harm to the parties cancel each other, then 'greater significance must be placed upon the likelihood that each party will ultimately succeed on the merits." *Id.* at 195–96 n.3; *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 924 (3d Cir. 1974).

Mr. Berg contends that his likelihood of succeeding on the merits is high.  The court, however, after carefully reviewing all of the arguments and evidence, cannot find that Mr. Berg has

---

[11]     Although Mr. Halperin stated that the company was in deadlock during his testimony, he apparently was referring to the time period when Mr. Berg was not complying with the state TROs.  (Defs.' Supp. Resp. in Opp. to Pl.'s Mot. for TRO/Prelim. Inj. 11.)

[12]     The court notes the preliminary injunction analysis in this case has proven more difficult than most cases as the court has had to sort through the parties' extensive name-calling and apparent lack of credibility.

established a high likelihood that his claims will be successful. Although this factor is crucial to the court's ruling because of the equipoise in the balancing of hardships, Mr. Berg's attorneys devote only three sentences to this factor in their prehearing motion (Mot. for TRO/Prelim. Inj. 19) and just three additional sentences in the posthearing brief the court requested (Pl.'s Br. on Prelim. Inj. Issues 6). The plaintiff's brief rests the argument about this factor on the conclusory statement that the "likelihood of success on the merits of what is being requested by way of injunctive relief does not get any higher." (*Id.*) At the hearing, the plaintiff did point to facts suggesting that some of Mr. Berg's claims could be successful. The court, however, heard as much, if not more, evidence from the defense suggesting that Mr. Berg would not win on the merits. Considering all of the evidence, the court **FINDS** Mr. Berg was unable to establish the likelihood of success that is required for this court to alter the present status of the parties.

Even though Mr. Berg points to numerous ways in which Mr. Halperin has allegedly breached the provisional operating agreement (Nov. 22 Hr'g Tr. 38:8–15, 42:11–14, 44:1–23), the effectiveness of that agreement has been called into question by others (*Id.* 37:3–14, 45:17–21). Also, although the defendant does not explicitly make this argument, it appears that Mr. Halperin essentially argues that the provisional operating agreement became obsolete once Mr. Berg breached it by engaging in a pattern of allegedly questionable conduct. (Nov. 23 Hr'g Tr. 10:20–24, 12:1.) Given the record before the court, Mr. Berg has been unable to make the requisite showing of a likelihood of success on his claims based on the operating agreement.

Mr. Berg also has alleged that Mr. Halperin has defamed him. Mr. Halperin admitted in the hearing that a press release did contain a false statement about Mr. Berg's current status with Mountain America. (Nov. 22 Hr'g Tr. 49:23–24.) To make out a defamation claim under West

-23-

Virginia law, Mr. Berg would have to prove that Mr. Halperin, lacking any qualified privilege, made a false, defamatory statement to a third party and that the statement caused harm to Mr. Berg. *Straitwell v. Nat'l Steel Corp.*, 869 F.2d 248, 250 (4th Cir. 1989) (citing *Crump v. Beckley Newspaper, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1984)).  At the hearing, Mr. Berg was unable to prove that success on his defamation claims is likely because he did not show that the defamatory statements Mr. Halperin made specifically caused him harm.  More evidence actually was introduced suggesting that any alleged harm caused to Mr. Berg's reputation was caused in other ways.  Specifically, Mr. Halperin's attorneys introduced evidence that Mr. Berg's Nevada contractors license has been revoked for misrepresentation (Nov. 23 Hr'g Tr. 72:12–25, 73:1–25, 74:1–22), newspaper articles have been published denigrating Mr. Berg (*Id*. 79:4–25), and that Mr. Berg does not actually have a West Virginia contractors license (*Id*. 75:1–7).  Because Mr. Berg introduced no evidence tying Mr. Halperin's allegedly defamatory statement with any specific injury, the court cannot find that Mr. Berg has established that it is likely his defamation claims will be successful.

Against the backdrop that a preliminary injunction should not be granted unless a plaintiff clearly establishes that he is entitled to that relief, this court **FINDS** that the issuing of a preliminary injunction in this case would be improper.  Accordingly, based on the above findings of fact and conclusions of law, the court **DENIES** the plaintiff's motion.  The state-court TROs have outlined a temporary solution for the parties and will continue to govern the parties in the interim.  As discussed at the hearing, this case will be placed on an expedited schedule with a trial date set for February 7, 2006.  The rest of the schedule is contained in the accompanying Scheduling Order.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        December 9, 2005

JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE